Alice POLLOCK, Appellant,

v.

**BERLIN-WHEELER, INC.,**
Respondent.

**No. WD 60568.**

Missouri Court of Appeals,
Western District.

May 20, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 2003.

Application for Transfer Denied
Aug. 26, 2003.

Daniel E. Hunt, Jefferson City, for appellant.

Cathleen A. Martin, Jefferson City, for respondent.

Before: LOWENSTEIN, P.J.,
ULRICH, J. and STEELE, Sp.J.

HAROLD L. LOWENSTEIN, Judge.

This is a court tried case stemming from the breach of a contract for employment. The plaintiff-appellant, Alice Pollock, and Berlin–Wheeler entered into a contract where Pollock, who ran an executive recruiting business, was to be the employee of the respondent, which ran an employment agency. Pollock was to devote full-time to the respondent and be paid a salary plus a percentage of commissions she generated. She was terminated over her failure to report commissions generated, and she filed this suit to collect other commissions she claimed were hers under the contract. Pollock, among other things, sought damages for not receiving timely notice of termination and for her moving expenses. Berlin–Wheeler's counterclaim sought damages for lost commissions and for money paid. The judgment awarded a net amount of $2,162.50 to Berlin–Wheeler. Only Pollock appealed.

## I. Facts

On August 14, 1998, Alice Pollock, the appellant, entered into an employment contract with Berlin–Wheeler, Inc., the respondent, to help find jobs for customers of Berlin–Wheeler. Berlin–Wheeler operated as "Decker and Decker."

Pollock's contract included the following terms:

1. *Employment and duties.* Decker agrees to employ Ms. Pollock to perform professional services as a certified professional consultant, specializing in employment placements. Ms. Pollock shall work full time for Decker as a certified personnel consultant, working in Decker's office in Jefferson City, Missouri. She agrees that she will share her present job candidates and job openings with Decker. She further agrees she will work with and train Decker's employee, Kevin Honeycutt. She further agrees that she will work to develop the contract employee market and assist in the training of Kevin Honeycutt in that market. She further agrees that Decker can use her trade name, First Place Executive Recruiters, and at such time as her employment with Decker may terminate, said trade name will stay with Decker, at its option. Use of the First Place Executive Recruiters trade name shall not be deemed to be an assumption by Decker of Ms. Pollock's business or any liability associated with her business.

\* \* \*

3. *Compensation.* Decker agrees to pay Ms. Pollock as compensation for her services an annual salary of $35,000.00, payable in twenty-four installments, on the first and fifteenth of each month. In addition, Ms. Pollock shall be paid a commission on *fees generated through her efforts* (emphasis added). The commission for the first full calendar year, being January 1, 1999 through December 31, 1999, shall be as follows: 15% on the first $100,000.00 of fees generated through her efforts; 25% on the next $45,000.00; and 50% on fees over $145,000.00. Thereafter, beginning January 1, 2000, Ms. Pollock's commission, in addition to her salary, shall be 25% on the first $125,000.00 and 50% on the total fees above $125,000.00

\* \* \*

6. *Conduct of Ms. Pollock.* Ms. Pollock agrees to perform her services and

duties in compliance with the usual and customary standards for her profession.

The memorandum of their agreement had a merger clause. It also provided that either party could terminate the agreement by giving thirty days notice.

Pollock began working for Berlin–Wheeler on September 14, 1998, as required by the contract. Sometime thereafter, Pollock placed Melissa Legge with Cardinal Scale & Manufacturing Company, though Pollock had tried to place Legge before working for Berlin–Wheeler. To make the placement, Pollock used a fax machine at Berlin–Wheeler to send Legge's resume to Cardinal Scale. Scale hired Legge on October 12, 1998; Legge began working the next day. Pollock later received an $8,125 check from Cardinal Scale for her role in the placement. Pollock deposited the check into her business's account and paid another company half the check amount. She did not notify Berlin–Wheeler of the placement nor of her receipt of the check. Berlin–Wheeler's evidence, through its agent, was that Pollock was at work for at least forty hours a week but that she spent some of her time working for her own business.

On November 14, 1999, Berlin–Wheeler terminated Pollock without giving the required thirty days notice. Pollock did not receive $3000 that she otherwise would have been paid had she not been terminated nor did she receive any further commissions, though Honeycutt had made placements during the thirty days after Pollock's termination.

Pollock filed this breach of contract suit, seeking, damages of $3,000 in salary (representing her failure to receive a one month notice of termination); $13,675 in commissions (without specifying the dates they were earned); costs and expenses stemming from her termination, including $111.30 of unpaid insurance and $1,050 for her moving expenses (the contract of employment had provided $2,000 reimbursement for her expenses in moving to Jefferson City); and attorneys fees plus interest from December 2, 1999.

In its answer, Berlin–Wheeler countered that Pollock's conversion of the placement check estopped Pollock from recovering back-pay and commissions. Berlin–Wheeler also raised two other affirmative defenses, namely, that Pollock had defrauded Berlin–Wheeler and that Pollock waived her right to compensation by converting the Cardinal Scale check. Berlin–Wheeler prayed for a set-off of $11,556.80, equal to the sum of the unemployment compensation Pollock had drawn from Berlin–Wheeler, and counter-claimed for breach of contract (seeking damages for Pollock's failure to disclose the placement of Legge), for conversion of the placement check, for "a pattern of action against the best interests of [Berlin–Wheeler]," and for fraud. The total actual damages of $11,556.80 sought by respondent were—$8,125 (amount of the check) and $3,431.80 (unemployment compensation)—and an unspecified amount of punitive damages (presumptively stemming from the conversion and fraud claims).

The trial court made the following conclusions: (1) Pollock had not proved by a preponderance of the evidence that Berlin–Wheeler owed her commissions; (2) Berlin–Wheeler was liable for breach of contract because it had not given Pollock a thirty-day notice before terminating her and thus owed Pollock $3,000 in back-pay; and Pollock owed Berlin–Wheeler $1,100, the amount of unemployment compensation, leaving $1,900 due Pollock from Berline–Wheeler on the termination issue; (3) Pollock was thus liable to Berlin–Wheeler for $1900; (5) Pollock was not entitled to moving expenses because she would have had to pay for them whether she had been

terminated or not; and (6) Pollock owed Berlin–Wheeler $4062.50 as a commission for placing Legge. Judgment was for Berlin–Wheeler in the amount of $2,162.50.

## II. Standard of Review

In reviewing a court-tried case, the judgment of the trial court must be affirmed unless there was insufficient evidence to support it, it was against the weight of the evidence, or it either misapplied or misconstrued the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). All evidence and inferences favorable to the prevailing party are accepted as true and all contrary facts and inferences are disregarded. *Judy v. Judy*, 998 S.W.2d 45, 49 (Mo.App.1999). If the grounds upon which the trial court based its judgment are erroneous, an appellate court may nonetheless affirm the judgment on any pleaded theory supported by the evidence. *Webcon Group, Inc. v. S.M. Properties, L.P.*, 1 S.W.3d 538, 541 (Mo.App.1999). (This is true even if the respondent does not raise the theory on appeal, for it is only an appellant (or cross-appellant) who can abandon points by not raising them on appeal. *Boyer v. Grandview Manor Care Center, Inc.*, 793 S.W.2d 346, 347–48 (Mo. banc 1990).)

## III. Analysis

Pollock's contention that there was insufficient evidence for the court to find that she had converted the commission check related to Legge's placement is a tenable theory. Nevertheless, the trial court did not err in awarding to Berlin–Wheeler half the amount of the check resulting from the placement of Melissa Legge with Cardinal Scale.

Conversion is the "unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Mertz v. Blockbuster, Inc.*, 32 S.W.3d 130, 133 (Mo. App.2000). Notwithstanding this definition, negotiable instruments like checks and promissory notes can be converted. *Diversified Developers, Inc. v. Peterson*, 41 S.W.3d 48, 48 (Mo.App.2001)(mem.); RESTATEMENT (SECOND) OF TORTS § 242 (1965). Pollock admits to cashing the check and using the proceeds as her own, so the only issue here is whether the record supports the court's implicit finding that Berlin–Wheeler had a superior property interest in the check.

While contracts can create property rights, *see Riddle ex rel. Riddle v. Elk Creek Salers, Ltd.*, 52 S.W.3d 644, 646 (Mo.App.2001) (equitable conversion vests equitable title in vendee upon entering into realty sales contract); *Lim v. Cent. DuPage Hosp.*, 871 F.2d 644, 648 (7th Cir. 1989) (Posner, J.); *Norman v. Balt. & Ohio R.R. Co.*, 294 U.S. 240, 307–08, 55 S.Ct. 407, 79 L.Ed. 885 (1935), Pollock's contract did not transform the placement check into Berlin–Wheeler's property. Nothing in the memorandum of their contract (which this court interprets *de novo, Helterbrand v. Five Star Mobile Home Sales, Inc.*, 48 S.W.3d 649, 658) (Mo.App. W.D.2001) provides for the allocation of payments received because of placements Pollock made after she began working for Berlin–Wheeler but that were the product, in part, of work done beforehand. That the contract requires her to work full-time does not mean Berlin–Wheeler had a right to the fruits of Pollock's labor before her tenure at Berlin–Wheeler. (Accordingly, the evidence adduced by Berlin–Wheeler showing that while she may have been physically present forty hours a week, she was spending some of the time acting on her own behalf (i.e., in breach of her fiduciary duties) is of no importance to the interpretation issue.)

According to paragraph one of the memorandum, Pollock must "share her present job candidates and job openings with Decker" (the business name used by Berlin–Wheeler), but it is unclear whether this means she must make available to her employer her job candidates and job openings, merely providing information which Berlin–Wheeler does not charge her with failing to do—or whether she must share any of the proceeds earned from placing candidates. Both are reasonable interpretations of the contract, and, hence, it is ambiguous. *Eisenberg v. Redd*, 38 S.W.3d 409, 411 (Mo. banc 2001). Context helps disambiguate it. *Sonoma Mgmt. Co. v. Boessen*, 70 S.W.3d 475, 481 (Mo.App. 2002). Paragraph one appears to deal exclusively with the relaying of information. According to it, Pollock must, for instance, train an employee, let Berlin–Wheeler use her company's trade name, and "develop the contract employee market." Only paragraph three deals with compensation. It thus is improbable that the first meaning (merely providing information) was the intended one. *See City of Harrisonville v. Pub. Water Supply Dist. Number 9 of Cass County*, 49 S.W.3d 225, 230 (Mo.App. 2001) ("The primary rule in interpretation of contracts is to ascertain the intent of the parties and give effect to that intent.")

The clause stipulating that Berlin–Wheeler may "use [Pollock's] trade name, First Place Executive Recruiters," though "use of the ... trade name shall not be deemed an assumption ... of Pollock's business or any liability associated with her business," does not help resolve the interpretive dispute. This clause merely allows Pollock to retain ownership of her business, allows Berlin–Wheeler to use the name, and absolves Berlin–Wheeler of any liability incurred by Pollock in running her business. It anticipates that Pollock would still be allowed to operate her own business. It is unclear whether an objective person would read the contract as giving Pollock the right to keep any compensation resulting from placements she attempted to make before starting her job at Berlin–Wheeler. Most likely the term was a just a far-from-exact attempt to waive *liability*—and nothing more.

Paragraph six's requirement that Pollock "perform her services and duties in compliance with the usual and customary standards of her profession" might prohibit Pollock's retention of the placement check. But respondent never presented this argument to the trial court, and, more importantly, there is no evidence in the record sufficient to establish the custom within the industry regarding these checks.

■ The contract does not prohibit Pollock from competing with her employer during the term of her employment. (There is, however, a non-compete clause that kicks-in after Pollock's termination.) Nevertheless, Pollock, as Berlin–Wheeler's agent, had a duty not to compete with her employer during her employment by Berlin–Wheeler. *See Cohn v. Jefferson Sav. & Loan Ass'n*, 349 S.W.2d 854, 858 (Mo. 1961); RESTATEMENT (SECOND) OF AGENCY § 393 (1958) ("Unless otherwise agreed, an agent is subject to a duty not to compete with the principal concerning the subject matter of his agency."). *But cf. National Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 26 (Mo. banc 1966).

■ An agent's duty not to compete with its principal is an implied-in-law term of an agency contract, one not waived by a merger clause, for a merger clause (at least the one here) applies only to the "agreement of the parties," meaning "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of perfor-

mance[.]" *See* § 400.1–201. An employee's fiduciary duty has nothing to do with the parties' agreement in fact; it is a constructive term of every employment contract, unless waived by the parties. *Orange County Sanitation v. Cooper Indus., Inc.,* 36 F.3d 1103, 1994 WL 477716, at *2 (9th Cir.1994) ("[M]erger clause does not bar additional terms implied by law."). *See also Davies v. Motor Radio Co.,* 236 S.W.2d 409, 413 (Mo.App.1951) (merger clause speaking solely in terms of parties' "agreement" does not exclude implied-in-law warranty).

■ An agent who competes with his (or her) principal must disgorge any benefits resulting from the competition, *Utlaut v. Glick Real Estate Co.,* 246 S.W.2d 760, 763 (Mo.1952), unless the parties ratify the competition or waive or qualify the prohibition.[1] *But cf.* § 351.055(9) (director cannot disclaim duty of loyalty). Berlin–Wheeler's disclaimer of any ownership interest or liability stemming from the operation of Pollock's business was not tantamount an affirmative waiver allowing Pollock to compete with her employer. *See supra.* Against this it might be argued that the clause must allow Pollock to compete with Berlin–Wheeler because not reading the clause as a waiver would treat the contract as leaving Pollock with a shell company. This is untrue; assuming her articles of incorporation or equivalent document allows it, Pollock's business could engage in any lawful business. *See* § 351.020. Moreover, Pollock status as an employee (as an agent) forestalls allowing her to compete with her employer.

Pollock's breach of fiduciary duty did not transform the check into Berlin–Wheeler's property, and without any other evidence of Berlin–Wheeler's ownership—which a scouring of the record fails to reveal—there was insufficient evidence of Berlin–Wheeler's ownership of the check. No matter: Berlin–Wheeler's counterclaim for breach of contract contended that Pollock was liable for failing to disclose her employment by her business and her placement of Legge, *i.e.,* for failing to disclose her competition. And there was sufficient evidence to find that Pollock competed with Berlin–Wheeler during her employment there. In her reply brief, Pollock states that "Melissa Legge's placement at Cardinal Sale was done through First Place, not through ... Berlin–Wheeler" and "[t]he commission on the placement of Ms. Legge [was] a benefit of Ms. Pollock's business." While Pollock may have attempted to place Legge before starting her job at Berlin–Wheeler, Legge did not receive a job offer until nearly one month after Pollock started. Pollock did not earn the check until after the placement was made. In short, she earned the check while competing against her employer.

■ Hence, Pollock's ownership *vel non* of the check is unimportant. The court's judgment regarding the check is warranted by Pollock's breach of her duty of loyalty—but only partially. Whether liability was predicated on conversion or breach of fiduciary duty, Berlin–Wheeler was entitled to the entire amount of the check. But Berlin–Wheeler's failure to cross appeal (*see* Rule 81.04(b)) prevents this court from awarding Berlin–Wheeler the entire amount.[2] *International Har-*

1. This is not a prohibition of all moonlighting; so long as an employee does not compete with her employer, there is no risk of liability.

2. It is unclear why the court awarded Pollock only half the value of the check; the judgment does not say why. In all likelihood, the court did so because of the contract's requirement that Pollock share job prospects with her em-

*vester Co. v. Mahacek,* 705 S.W.2d 603, 605 (Mo.App.1986). *See also Massachusetts Mut. Life Ins. Co. v. Ludwig,* 426 U.S. 479, 480–81, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976).

■ Moreover, though breach of fiduciary duty can rise to the level of a material breach of contract, excusing further performance by the principal, *see Zakibe v. Ahrens & McCarron, Inc.,* 28 S.W.3d 373, 385 (Mo.App.2000); WILLIAM A. GREGORY, THE LAW OF AGENCY & PARTNERSHIP § 149 (3rd ed.2001), Berlin–Wheeler does not argue on appeal that it need not have given Pollock thirty-days notice because of her breach of fiduciary duty. Berlin–Wheeler's failure to cross appeal also bars reversal of the court's award of back-pay. *Mahacek,* 705 S.W.2d at 605.

It does, however, warrant the trial court's decision not to award damages to Pollock for Berlin–Wheeler's failure to pay commissions for the thirty-day period following her termination. Berlin–Wheeler's breach of contract claim was pled as an counter-claim, but the trial court could have (the court's findings do not say) treated it as an affirmative defense. Rule 55.08. There was sufficient evidence that the judge, as the fact-finder, could have concluded that Pollock's breach was material, thus depriving Pollock of any right to commissions earned after her termination.[3] *McKnight v. Midwest Eye Inst. of Kansas City, Inc.,* 799 S.W.2d 909, 915 (Mo.App. 1990) (materiality of breach as question of fact is usually to be decided by fact-finder).

ployer. As indicated above, this is a misreading of the contract. Another possible explanation is that the trial court thought that Berlin–Wheeler could only recover the amount of the proceeds Pollock had retained. This is a misreading of the remedy for conversion, which is the full value of the converted item. *Schaefer v. Spence,* 813 S.W.2d 92, 96 (Mo.App.1991).

(It would not deprive her of her right to commissions earned before the breach; however, Pollock did not request these damages in her petition.)

The judgment of $2,162.50 in favor of Berlin–Wheeler is affirmed.

All concur.

3. The holding in this case may seem inconsistent. On the one hand, the award of base salary for a thirty-day period is affirmed. On the other hand, the trial court did not err in refusing to award Pollock the commissions generated during the same period. (However, Berlin–Wheeler has not appealed any portion of the judgment adverse to it.)