# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2522

_____

| | | |
|---|---|---|
| Protective Life Insurance Company, a Tennessee Corporation; Lincoln Benefit Life Company, a Nebraska Corporation, | * * * * * * | |
| Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Jim Orr & Associates, Inc., a Missouri Corporation, | * * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 5, 2004
Filed: October 7, 2004

_____

Before BYE, McMILLIAN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Jim Orr and Associates, Inc. (Orr) appeals the district court's adverse grant of summary judgment in this diversity action by Protective Life Insurance Company and

Lincoln Benefit Life Company (collectively, Lincoln[1]) to recover portions of commissions Lincoln paid to Orr. We reverse and remand.

Lincoln provides credit life and disability insurance to borrowers of loans for expensive items such as automobiles and jewelry. Orr was an insurance agent for Lincoln from March 1989 until November 1997. Lincoln required purchasers of insurance to pay, up front, the entire premium for the life of the policy. If the insured requested early cancellation of the policy, Lincoln would return a portion of the prepaid premium. Concomitantly, Lincoln paid Orr a commission up front based on a percentage of the entire premium paid by the purchaser, on the assumption the policy would remain in effect for the intended policy period.

During the time Orr acted as Lincoln's insurance agent, Orr partially refunded to Lincoln any commissions attributable to cancelled policies ("chargebacks" for "unearned commissions") via reductions in new commissions. The parties disagree, however, whether the agency agreement between Lincoln and Orr actually required Orr to pay those chargebacks, and if so, whether the requirement continued even after Orr terminated its agency relationship with Lincoln. Specifically, in October 1999, approximately two years after Orr terminated its relationship with Lincoln, Lincoln demanded Orr repay $148,271.72 in commissions it had received for policies that had been cancelled after Orr terminated the contract. When Orr refused, Lincoln filed the instant breach-of-contract action.

Both parties rely on the following contract language:

---

[1]Protective Life Insurance Company purchased Lincoln's credit life and disability insurance business in 1997. The parties refer to plaintiffs collectively as "Lincoln."

Fiscal Responsibility

The AGENT shall immediately pay to the COMPANY all monies received by him or his subagents on all applications obtained and policies and certificates issued. All such funds shall be segregated by the AGENT and held by him in trust, and shall not be used by him for any purpose.

Should the COMPANY for any reason cancel a policy or certificate and return the premium, the AGENT shall promptly return all commissions received on such policy or certificate to the COMPANY.

Lincoln moved for summary judgment and submitted numerous depositions and affidavits indicating Lincoln regarded the Fiscal Responsibility clause as implementing its policy of requiring agents to refund partial commissions on cancelled policies--a policy Lincoln maintained was universal in the insurance field. Jim Orr testified all other companies with whom he had worked specifically addressed chargebacks in their contracts, and he had negotiated with Lincoln to ensure no chargeback clause was included in his contract; however, Orr acknowledged he had orally agreed to pay chargebacks while the contract was in effect.

The district court concluded the Fiscal Responsibility clause was unambiguous and required Orr to repay the unearned commissions regardless when the agency contract terminated, because no provision limited Orr's duty to repay if the contract terminated. Orr argues the agency contract unambiguously precluded any obligation to pay, because, among other things, neither the contract's Fiscal Responsibility clause nor its Termination clause imposed a post-termination duty on Orr to refund partial commissions. Alternatively, he argues, if the contract was ambiguous, and resort to extrinsic evidence was appropriate, then Lincoln had not demonstrated any industry practice and the proper interpretation of the Fiscal Responsibility clause was governed by Jim Orr's testimony.

We review de novo the grant of summary judgment, as well as the district court's interpretation of state law and the contract. See Centric Jones Co. v. City of Kearney, Neb., 324 F.3d 646, 648-49 (8th Cir. 2003). The parties and the district court applied Missouri law, and we do so as well.

The Fiscal Responsibility clause does not mention early cancellations of policies, partial returns of premiums, or partial refunds of commissions, and the contract arguably is silent as to Orr's duty to pay refunds after cancelling its agency agreement. We conclude these omitted terms were not clearly implied-in-law terms of the contract, cf. Pollock v. Berlin-Wheeler, Inc., 112 S.W.3d 73, 78-79 (Mo. Ct. App. 2003) (implied-in-law terms include agent's duty not to compete, employee's fiduciary duty, and implied-in-law warranty); Birdsong v. Bydalek, 953 S.W.2d 103, 120 (Mo. Ct. App. 1997) (every contract imposes general duty of good faith and fair dealing), and thus we cannot agree with the district court that the clause unambiguously required Orr to pay chargebacks on policies cancelled early, either during the agency agreement or afterwards. We cannot agree with Orr, however, that the contract unambiguously precluded any obligation to pay. Rather, we conclude the contract is ambiguous.

For example, the Termination clause, which provides, "[u]pon termination the AGENT shall in no manner act for the COMPANY and shall promptly remit to the COMPANY any monies *then* held for it" (emphasis added), could be interpreted to demonstrate the parties did not agree to an ongoing duty to pay chargebacks. On the other hand, the Termination clause could be interpreted not to qualify the Fiscal Responsibility clause, which may or may not be conclusive as to Orr's duty to pay.

Given our conclusion a latent ambiguity exists, resort to extrinsic evidence is appropriate. See State Farm Mut. Auto. Ins. Co. v. Esswein, 43 S.W.3d 833, 842 (Mo. Ct. App. 2000) (when contract is ambiguous, a court may resort to extrinsic evidence to determine true intent of parties). Our review of the record, however,

convinces us the parties' intent cannot conclusively be determined from the available extrinsic evidence.  Thus, we remand so a factfinder may examine the contract language and the evidence presented by the parties to determine whether Orr was required to pay chargebacks during the life of the agreement, and whether any such obligation survived termination of the agency relationship.  See Vandever v. Junior Coll. Dist. of Metro. Kan. City, 708 S.W.2d 711, 717 (Mo. Ct. App. 1986) (if court cannot resolve ambiguity based on all circumstances, evidence, and rules of construction, or if resolution of ambiguity requires weighing evidence, issue is for jury).

Accordingly, we reverse and remand for further proceedings.

_____