STATE of Missouri, Plaintiff–
Respondent,

v.

Tina Louise HALL, Defendant–
Appellant.

No. 25304.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 24, 2003.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, John M. Morris, Assistant Attorney General, Jefferson City, for respondent.

JAMES K. PREWITT, Judge.

Following jury trial, Tina Louis Hall (Appellant) was convicted of the class C felony of possession of a controlled substance, in violation of § 195.202, RSMo, and sentenced under §§ 558.011 and 560.011, RSMo, to five years' imprisonment. Execution of her sentence was suspended and she was placed on supervised probation.

The evidence viewed in the light most favorable to the verdict follows. On October 10, 2001, Lieutenant Hank Hill and Deputy Jason Ward observed a Ford Bronco pass them with two children inside who appeared to be unrestrained. When they ran the license number and discovered that the license plates were registered to a 1985 Chevrolet, they stopped the vehicle.

Glenn Smith was the driver and owner of the Bronco, and Appellant was the front-seat passenger. Smith's two chil-

dren were in the back seat. Lieutenant Hill questioned Smith outside of the vehicle while Deputy Ward, with Smith's consent, conducted a search of the interior. Appellant waited outside with the two children.

Inside the console, which was situated between the two front bucket seats, Deputy Ward found a plastic spoon and a straw. The spoon had a white residue on it which, based on a field test of the residue, tested positive for methamphetamine. They placed Glenn Smith under arrest and transported him to the police station. Appellant drove the two children back to the police station in the Bronco.

A further search was conducted on the Bronco when it arrived at the police station, and other items were discovered, including a metal jar lid and a glass. Inside a McDonald's bag found in front of the console, they discovered four "dirty" syringes and a piece of aluminum foil.

Appellant was charged by information in New Madrid County with the offense of possession of a controlled substance, under § 195.202, RSMo. On her motion for change of venue, the case was transferred to Mississippi County. Appellant entered a plea of not guilty to the charge and her trial was held September 27, 2002.

At trial, Lieutenant Hill testified regarding the traffic stop and subsequent arrests. Deputy Ward testified regarding his search and subsequent discovery of the spoon and straw inside the Bronco's console. Police captain, David Simmons, who had responded to assist Hill and Ward, testified that he searched the vehicle with Ward at the time of the initial stop and later back at the station, whereupon he discovered the four syringes and foil in the McDonald's bag.

Glenn Smith testified on behalf of the State, pursuant to a plea agreement whereby he would receive a sentence of "time served" and a reduced charge of possession of paraphernalia in exchange for his truthful testimony. Smith testified that Appellant had arrived at his home on the afternoon of October 10, 2001, "to get high," and the two of them injected a half of a gram each of methamphetamine. Smith stated that he had needed to purchase cigarettes and dispose of the syringes, so he and Appellant left Smith's house together in the Bronco, picking up his two children at a neighbor's home nearby. They were subsequently pulled over by Lieutenant Hill and Deputy Ward.

The jury returned a verdict of guilty. Appellant appeals, presenting one point relied on:

The trial court abused its discretion in sustaining the State's objection to defense counsel's questioning State's witness Glenn Smith about whether he could have been charged in the instant offense as a prior and persistent drug offender, because this ruling violated [Appellant's] rights to due process and confrontation, guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that without Smith's testimony, there was insufficient evidence to convict [Appellant] since the methamphetamine in the car could not have been shown to be under her control, and Smith's credibility was therefore critical. Defense counsel needed to be able to explore Smith's bias and prejudice, including his motivation to testify falsely in order to obtain a beneficial sentence from the State.

A trial court is vested with broad discretion in controlling the scope of cross-examination, and error will be found only if this discretion is clearly abused. *State v. Oates*, 12 S.W.3d 307, 313 (Mo.banc

2000). "In matters involving the admission of evidence, we also review for prejudice and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Foster,* 68 S.W.3d 530, 532 (Mo.App.2001).

■ "[A]n important purpose of the constitutionally protected right of cross-examination is to provide litigants with a meaningful opportunity to challenge the veracity of testimony through the process of impeachment." *State v. Johnson,* 700 S.W.2d 815, 817 (Mo.banc 1985). The interest or bias of a witness are never irrelevant matters. *State v. Montgomery,* 901 S.W.2d 255, 256 (Mo.App.1995).

■ Cross-examination for the purpose of impeachment of a witness' credibility is allowed when the inquiry demonstrates a possible motivation to testify favorably for the State or an expectation of leniency. *State v. Lockhart,* 507 S.W.2d 395, 396 (Mo.1974).

■ Any time the State enters into a plea agreement with a witness who receives immunity or a reduction in sentencing in exchange for his or her "truthful" testimony, the issues of bias and self-interest arise, since plea agreements are "double edged swords," *State v. Dudley,* 51 S.W.3d 44, 54 (Mo.App.2001), both supporting a witness' credibility and impeaching it by revealing a motivation to testify favorably for the government. *State v. Wolfe,* 13 S.W.3d 248, 256 (Mo.banc 2000).

■ Such testimony may be properly excluded where "issues were at best marginally relevant to [a witness'] credibility and would have added little to the substantial attacks on [the witness'] credibility already made by defense counsel," *State v. Mayes,* 63 S.W.3d 615, 630 (Mo.banc 2001), in cases where the impeachment centered on an immaterial or collateral matter, *State v. Mann,* 23 S.W.3d 824, 835 (Mo.

App.2000), and in cases "where the tendency of a given item of testimony is too tenuous to show hostility on the part of a witness[.]" *State v. Roberts,* 778 S.W.2d 763, 764 (Mo.App.1989).

■ "The trial court may properly limit the scope and extent of cross-examination into a witness' bias or prejudice, but it is not within the trial court's discretion to prevent it entirely." *State v. Lampley,* 859 S.W.2d 909, 911 (Mo.App.1993).

Glenn Smith was called to testify by the State. The following portions from the transcript are set out from the State's direct examination regarding his criminal history and the agreement to testify that he entered into with the State:

Q  [By Prosecutor] I want you to outline for the jury exactly what the terms of your plea agreements are. Would you explain to the jury what you understand your plea agreements to be?

A  I am going to plead guilty to drug paraphernalia and get sentenced to do time served, which will be ten and a half months I have already served.

Q  You said you are pleading to paraphernalia. Are you aware of what class charge that is?

A  Class D.

Q  And you were previously charged with a Class C felony?

A  Yes.

Q  And you have been sitting in jail since January?

A  Yes.

. . . .

Q  Can you describe for the jury your criminal history?

A  I have a first degree burglary on my record, one stealing, a possession and a manufacturing.

Q  So you have possession of controlled substance?

A   Yes.

Q   And a manufacture of controlled substance?

A   Yes.

Q   So you have the two prior drug charges and the burglary and stealing?

A   Yes.

On cross-examination of Glenn Smith, defense counsel attempted to bring into question Smith's motivation in testifying against Appellant in order to impeach Smith's credibility:

BY [Defense Counsel]:

Q   Here you are today living up to your end of the deal; is that right?

[Prosecutor]: Your Honor, I object to that as being argumentative.

THE COURT: Rephrase your question.

Q   Part of your deal was to testify against [Appellant]?

A Yes.

Q   It wasn't just to plead guilty?

A Right.

Q   And you had to testify against [Appellant]?

A Yes.

Q   So you coming here and saying [Appellant] didn't know anything about the needles would do you no good; is that correct?

A Right, yes.

Q   You wouldn't get time served?

A I don't know.

Q   You have already pled guilty to this charge?

A Yes.

Q   In fact, you pled guilty to an amended D felony; it was originally a C felony; is that correct?

A Yes.

Q   And you have not been sentenced yet?

A No.

Q   In fact, you go to court for sentencing next month?

A Yes.

Q   And that is when you have the deal of time served if you were to testify today?

A Right.

Q   But, of course, if you don't testify against [Appellant], they don't have to live up to their end of the bargain for time served?

A Possibly.

Q   Of course, you want to minimize the time you have to serve?

A Sure.

Q   You would do anything to minimize the time you have to serve, right?

A No.

Q   Oh, you wouldn't?

A No. sir.

Q   You wouldn't do anything to help yourself?

A No, not anything. Anything is a strong word.

Q   But the fact of the matter is, without your testimony against [Appellant], there's no deal here?

A Right.

Q   Your plea of guilty alone was not good enough to amend it down to a D felony?

A I don't guess so.

Q   And it wasn't good enough for time served?

A I don't guess so.

Q   I want to go through your priors that you just talked to [Prosecutor] about. You are a convicted burglar?

A Yes.

Q   Is that New Madrid city or county?

A County.

Q You are a convicted drug user?

A Yes.

Q For the use of—

A Meth.

Q And you are also a convicted drug manufacturer?

A Yes.

Q And you manufactured?

A Meth.

Q And in fact the possession charge and the manufacturing charge are in two different counties?

A Yes.

Q Possession charge in Pemiscot County?

A Yes.

Q Manufacturing charge in New Madrid County?

A Yes.

Q In fact, you actually went to prison on the manufacturing charge?

A Yes.

Q Got out on parole, which you were on on October 10, 2001?

A Yes.

Q How much time did you spend on this charge, this D felony paraphernalia charge?

A How long have I been in the county jail?

Q How long did you spend on this charge?

A Seven weeks, and then I got out for a couple months, and then I have been in almost nine months.

Q Would it be more safe to say that you possibly spent about three weeks in the county jail before you bonded out?

A No, I think it would be closer to five or six, but it might be. I am not sure. I got arrested October 10, and I am pretty sure I bonded out like four to five weeks.

Q And then you bonded out, so you were out on this charge that you just pled guilty to a couple weeks ago, this amended D felony?

A Yes.

Q And then you got put back in jail in January?

A Right.

Q Now that wasn't because of this charge?

A Well, when I bonded out, the parole let me bond out.

Q They allowed you to bond out?

A Right.

Q And they ordered you to go to treatment?

A Right.

Q You bonded out to treatment?

A Well, I went and—

Q You left early?

A Right.

Q You did not complete the treatment?

A Right.

Q So they put you back in jail?

A Right.

Q So you were put back in jail because you left treatment early, not because of this new charge?

A Right.

Q So it would be more honest to say you have only spent about four weeks on this charge you just pled guilty to, this charge which you are getting the deal for?

[Prosecutor]: Objection argumentative.

THE COURT: Restate your question.

Q We talked about your prior felony convictions, and you have a couple; is that correct?

A Yes.

Q   Specifically we talked about your prior felony drug convictions, correct?

A Yes.

Q   Now you have been around the criminal justice system for a while?

A Yes.

Q   You have been in prison before?

A Right.

Q   You are not a dumb guy when it comes to the system. You understand how the system works?

A Pretty much, yes.

Q   You pled to an A felony?

A Yes.

Q   And a B felony, a C felony and a D felony; is that correct?

A Yes.

Q   You know what it means when you have two felony convictions on your record, don't you, that your sentence can be enhanced?

A Yes.

Q   You have heard of prior and persistent offender?

A Yes.

Q   You also know what it means when you have two prior drug convictions on your record?

A I am not sure.

Q   You have heard of prior and persistent drug offender?

A I am not sure.

Q   So when you got on parole this last time, the parole board didn't tell you that you better not go out there and pick up a new drug charge?

A No.

Q   Let me ask you this, do you know what a C felony carries?

A Seven years, I believe.

Q   Do you know what a D felony carries?

A I am not sure.

Q   Five years.

A Up to five.

Q   So you were originally charged on the C felony of possession of controlled substance; is that correct?

A Yes.

Q   You are facing up to seven years.

A Yes.

Q   But, in fact, you were actually facing more than—

[Prosecutor]: Your Honor, may we approach?

(The following proceedings were held at the bench out of the hearing of the jury:)

[Prosecutor]: I have given [Counsel] substantial latitude in this area. Mr. Smith was never charged as a prior persistent offender, let alone as a prior persistent drug offender. It is the Prosecutor's Office who determines whether he faces the enhanced punishment.

THE COURT: Unless he was charged with that.

[Counsel]: He certainly could have been

THE COURT: No, no, not what he could have been. He could have been charged with homicide, but there's no dead person. What he was charged with, you can inquire into that. The deal that he made with the State, you can inquire into that, but what he could have gotten is speculative.

[Prosecutor]: And we have beat that into the ground, why he pled.

THE COURT: What else are you going to ask him about it? You can't ask any more about a prior persistent.

[Prosecutor]: And I think we have covered this area already. I would ask him to move on.

[Counsel]: Could I just wrap it up?

THE COURT: But not about whether a prior and persistent and what he could have.

(The following proceedings were held in the presence of the jury:)

Q So we know for sure that you were charged with a C felony?

A Yes.

Q And you pled that to a D felony?

A Yes.

Q And you are going to be getting time served for this testimony?

A Yes.

Q So you are avoiding what could have been up to seven years?

A Yes.

Q And that could have been added to your parole?

A Yes.

Q You are limiting yourself to the inevitable, which is your parole time?

A Yes.

. . . .

In delivering his closing argument, defense counsel made the following references to the subject of Glenn Smith's possible prior and/or persistent offender status, although the jury was instructed that closing arguments were not to be considered as evidence:

[By Counsel]: . . . Folks, he could be facing non parolable time because he's a prior and persistent drug offender.

[Prosecutor]: Objection, your Honor.

(The following proceedings were held at the bench out of the hearing of the jury:)

[Prosecutor]: Your Honor, I am going to object to that. He's asserting things not in evidence, things he was admon-

ished by the court not to go into. He's never been charged with a prior and persistent drug or felony offender in this case. It is an improper argument.

[Counsel]: I think part of your ruling was he was never facing prior and persistent because they never charged that. She certainly got into she did not charge him as a misdemeanor.

THE COURT: I will let him argue to say what he could have got.

(The following proceedings were held in the presence of the jury:)

[Counsel]: Now folks, [Prosecutor] is going to sit up here and tell you he was never charged as a prior and persistent drug offender. He wasn't, but that was certainly a possibility, a possibility that he was facing by going to trial. [Prosecutor] tells you he could have also gotten a misdemeanor. He didn't, but he could have been facing up to 20 years without parole, day for day, so those two years he's going to spend on parole, add 20 to it, folks, that's what he could have been facing, and Glenn knew that. . . . [1]

■ A prior drug offender is "one who has previously pleaded guilty to or has been found guilty of any felony offense of the laws of this state, or of the United States, or any other state, territory or district relating to controlled substances." § 195.275.1(1). A "persistent drug offender" is "one who has previously pleaded guilty to or has been found guilty of two or more felony offenses of the laws of this state or of the United States, or any other state, territory or district relating to controlled substances." § 195.275.1(2). Deciding whether to charge a defendant with a prior conviction is primarily within the discretion of a prosecuting attorney. *State v. Hill*, 396 S.W.2d 563, 566 (Mo.1965).

1. Appellant further contends in her argument that Glenn Smith could have received up to a thirty-year sentence instead of twenty years as referred to here.

When counsel asked Smith if he knew "what it means when you have two prior drug convictions on your record[,]" Smith responded, "I am not sure." There is no indication in the record that Smith had knowledge that he could have been facing an enhanced sentence, nor does the record reveal that such a threat existed and that the issue was a part of the plea agreement. In addition, counsel made no offer of proof as to what the witness would have testified had he been allowed to continue.

"When an objection to proffered evidence is sustained, the party offering the evidence must demonstrate its relevancy and materiality by way of an offer of proof in order to preserve the matter for appellate review." *State v. Cardona–Rivera*, 975 S.W.2d 200, 204 (Mo. App.1998). The reason for making an offer of proof is to insure that the trial court and opposing counsel can understand what evidence is being offered and the relevance of that evidence to the case. *Id.* So that an appellate court can determine whether or not the evidence should have been allowed, it "must first know exactly what evidence was excluded." *State v. Pisciot-*

*ta*, 968 S.W.2d 185, 189 (Mo.App.1998). Therefore, an offer must be specific and in sufficient detail to demonstrate its admissibility. *Id.* Mere conclusions of counsel will not suffice. *Id.*

Here, as is clearly shown by the record and excepts of the cross-examination of Smith, defense counsel was given wide latitude to question Smith regarding past crimes and the plea agreement. We fail to see how allowing additional, perhaps speculative, questions regarding Smith's potential status as a prior or persistent offender would necessarily have provided the jury with much information beyond what was already before them designed to impeach Smith's credibility and show bias. Point denied.

The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.