**Janet C. DICK and Lt. Col. Harold Dick, Respondents,**

v.

**CHILDREN'S MERCY HOSPITAL, Appellant.**

**No. WD 61616.**

Missouri Court of Appeals, Western District.

May 25, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2004.

Application for Transfer Denied Aug. 24, 2004.

Thomas P. Cartmell, Kansas City, MO, Thomas B. Weaver (Co-Counsel), St. Louis, MO, for appellant.

Brian T. Meyers, for Respondents.

Before HOWARD, P.J., LOWENSTEIN and SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

### OVERVIEW

Children's Mercy Hospital (appellant) appeals from the trial court's grant of a new trial to respondents Janet and Harold Dick after the jury had found in favor of appellant. The respondents sued for injuries suffered by Mrs. Dick, a business invitee, in the appellant's parking lot, under a theory of premises liability. It was unclear whether the new trial motion was granted because the verdict was against the weight of the evidence (discretionary) or because of trial errors (legal grounds).

### I. FACTS

Janet Dick took her son to appellant for tests in September 1998. While walking in appellant's parking garage, she broke her left foot when she stepped on an unmarked column base, an area of uneven, raised concrete. She later developed reflex sympathetic dystrophy, a complex pain syndrome requiring a series of surgical procedures, and incurred over $1 million in medical expenses. Medical experts said she was permanently disabled.

The respondents filed this premises liability action, claiming Janet Dick was a business invitee and that appellant was negligent in failing to warn her about or protect her from the column base, a dangerous condition of which appellant knew or should have known, while her husband, Harold Dick, sought damages for, among other things, loss of consortium.

At trial, appellant did not deny the significance of Janet Dick's injures, did not deny that she was an invitee, and did not put on any evidence that she was contributorily negligent.[1] Appellant's strategy was to convince the jury that it neither knew nor should have known of the dangerousness of the column base. In its opening statement, appellant said, "Now, this case is really about one thing. Did [appellant] know or by using ordinary care could [appellant] have known that it had a dangerous condition on its premises at the time of Janet Dick's fall—excuse me—accident? That's the key issue in this case. . . . I believe the evidence is going to show you that it was reasonable for [appellant] not to believe that [the column base was dangerous]." In line with this strategy, witnesses for appellant testified that in the

---

1. The parties disagree on whether the appellant conceded that the column base was dangerous. Since the merits of the parties' arguments do not turn on this issue, this court need not decide whether appellant made this concession at trial.

nearly three years after completion of the garage, and before Dick broke her foot, no one had complained about the column base; that a city inspector, after inspecting the garage, had issued a certificate of occupancy, which said that the garage was in compliance with Kansas City building codes; and that two other inspectors (one an employee of the architecture firm appellant hired to design and oversee construction of the garage, another an employee from the construction firm that built the garage) did not consider the column base dangerous, at least not until they learned of respondents' injuries.

At the close of all the evidence, the trial court submitted a jury instruction appellant proposed, one patterned on M.A.I. 22.03.[2] The second element of the instruction read, "[D]efendant Children's Mercy Hospital's employees knew or by using ordinary care *could have known of this condition.*" (emphasis added) The respondents' proposed instruction, which was rejected, did not include this second element. The jury returned a defendant's verdict.

The respondents' new trial motion alleged eight reasons for granting them relief. The reader is advised that ground number one, which respondents claim to be based on the verdict being against the weight of the evidence (a discretionary ground) because the respondents had proven, or the appellant had admitted, all but one of the elements of the verdict director, presents the interesting twist to this appeal. The other seven grounds are

clearly based on legal errors to have been committed at trial.

The trial court ruled as follows:

[The Dicks] have advanced eight allegations of trial error that the [c]ourt has considered in the light of the evidence adduced. Upon due consideration, the [c]ourt determines that the [Dicks'] and [CMH's] evidence established that the column base constituted a dangerous condition. By virtue of [CMH's] acceptance of the premises as designed and built, [CMH] has a non-delegable duty to make such conditions safe for its invitees. Accordingly, the [c]ourt finds and concludes that the trial errors committed as alleged in Points No. 1, 2, 3, 4, 6 and 8 of [the Dicks'] motion for new trial were of sufficient magnitude to deny [the Dicks] a fair trial and that a new trial on all issues is warranted and required upon the circumstances.

Appellant then filed this appeal, as authorized by Section 512.020, RSMo. (2000).

## II. STANDARD OF REVIEW

The paramount issue in this case is whether the trial court erred in granting respondent a new trial. A new trial can be granted as a remedy for prejudicial errors that occurred during trial, *Massman Constr. Co. v. Mo. Highway & Transp. Comm'n,* 914 S.W.2d 801, 803 (Mo. banc 1996), or where the verdict was against the weight of the evidence. *Braddy v. Union Pac. R.R. Co.,* 116 S.W.3d 645, 649 (Mo.

2. MAI 22.03 is set out as follows, except for footnotes:

22.03 [1995 Revision] Verdict Directing—Invitee Injured

Your verdict must be for plaintiff if you believe:

First, there was *(here describe substance on floor that caused the fall)* on the floor of defendant's store and as a result the floor was not reasonably safe, and

Second, defendant knew or by using ordinary care could have known of this condition, and

Third, defendant failed to use ordinary care to [remove it] [barricade it] [warn of it], and

Fourth, as a direct result of such failure, plaintiff sustained damage.

App.2003). Rule 78.02. The grant of a new trial based on legal errors is reviewed for an abuse of discretion, *Mason v. Wal–Mart Stores, Inc.*, 91 S.W.3d 738, 741 (Mo. App.2002), which is not present if reasonable minds could disagree about the propriety of the trial court's ruling. *Leo Journagan Constr. Co. v. City Utils. of Springfield, Mo.*, 116 S.W.3d 711, 722 (Mo. App.2003). A reviewing court must allow every reasonable inference favoring the trial court's ruling. *Lowdermilk v. Vescovo Bldg. & Realty Co.*, 91 S.W.3d 617, 625 (Mo.App.2002). The grant of a new trial based on Rule 78.02, that the verdict was against the weight of the evidence, will be reversed only if there has been a manifest abuse of discretion, since the trial court is in a better position to weigh evidence than the appellate courts. *Braddy*, 116 S.W.3d at 649. The grant of a new trial is more likely to be upheld than the denial. *Mason*, 91 S.W.3d at 741.

■ Appellant contends that the trial court did not grant the new trial on the discretionary ground that the judgment was against the weight of the evidence, Rule 78.02, but rather for erroneous legal reasons. Interpretation of the meaning of a trial court's judgment is a question of law. *State ex rel. Beaird v. Del Muro*, 98 S.W.3d 902, 909 (Mo.App.2003).

### III. ANALYSIS

#### A. Preliminary Matters

■ Appellant claims that the trial court's order is presumptively erroneous because it failed to give specific reasons for ordering a new trial. If a trial court does not give specific reasons why it granted a new trial, its order is presumed mistaken, and the burden of justifying the order falls on the respondent(s), here the respondent. *Whitted v. Healthline Mgmt., Inc.*, 90 S.W.3d 470, 474 (Mo.App.2002); Rule 84.05(c); Rule 78.03. Appellant is

wrong. The order's reference to points one, two, three, four, six, and eight of the respondents' motion make it specific. *See Hiers v. Lemley*, 834 S.W.2d 729, 731 (Mo. banc 1992) ("The argument that the trial court's order granting a new trial lacks specificity because it adopts its reasons by referencing a paragraph of the motion for new trial is without merit.") Other specific reasons include the court's conclusion that the respondent had "established that the column base constituted a dangerous condition" and that appellant had "a nondelegable duty to make [the column base] safe for its invitees."

Did the trial court specify *discretionary* reasons for its order? If not, this court cannot presume the court ordered a new trial for discretionary reasons. Rule 84.05(d). Whether the trial court specified discretionary reasons is a non-issue, for the respondent had not asked this court to *presume* that the new trial was ordered because of discretionary reasons. *Cf. Bishop v. Carper*, 81 S.W.3d 616, 619, 623 (Mo.App.2002) (vacating new trial order because trial court did not give any reasons for granting new trial). Rather, the respondent made extensive interpretive arguments that the trial court, in fact, did order a new trial for discretionary reasons, pointing to some of the points from their motion adopted by the trial court.

#### B. Did the trial court abuse its discretion by granting a new trial?

■ When a trial court grants a new trial for specific reasons, its ruling is deemed a rejection of all the other grounds asserted by the movant. *Kuzuf v. Gebhardt*, 602 S.W.2d 446, 451 (Mo. banc 1980) (citing *State ex rel. Sturm v. Allison*, 384 S.W.2d 544, 547 (Mo. banc 1964)); *Randolph v. USF & G Cos.*, 626 S.W.2d 418, 422 (Mo.App.1981); *Ernst v. Emerick*, 525 S.W.2d 573, 575 (Mo.App.1975). The

respondent does not argue that points five or seven of their motion should have been accepted by trial court, so this opinion is confined to deciding whether the points accepted by the trial court (points one, two, three, four, six, and eight) were valid reasons for granting a new trial.

■■■■ Trial courts have broad discretion to grant a new trial because the verdict was against the weight of the evidence. *McCormack v. Capital Elec. Constr. Co.*, 35 S.W.3d 410, 413 (Mo.App. 2000) (citing Rule 78.02). However, "[a] trial court has no discretion when ruling on an issue of law in a motion for new trial." *Ivy v. Hawk*, 878 S.W.2d 442, 445 (Mo. banc 1994).[3]

■■■ Point one reads as follows:

1. **The verdict is against the weight of the evidence.** To recover on their negligence claim, [the Dicks] had to prove that [CMH] maintained a dangerous condition on its property, that CMH failed to exercise ordinary care to remedy or adequately warn of that condition, and that plaintiff Janet Dick's injury was directly caused, or directly contributed to be caused [*sic* ], by such failure. *M.A.I. 22.03; M.A.I. 19.01.* Each of those factual propositions was either admitted by CMH during the trial, or was established by undisputed and indisputable evidence. The jury's verdict in favor of CMH is thus against the weight of the evidence, and should be set aside. *Supreme Court Rule 78.02.*

(emphasis in the original). Like a contract and a statute, a motion should be construed as a whole. *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428 (Mo. banc 2003); *Cousin's Adver., Inc. v. Bd. of Zoning Adjustment of Kansas City,* 78 S.W.3d 774, 780 (Mo.App. 2002).

■■■ The gravamen of point one is that the verdict was against the weight of the evidence because the respondent had proven (or appellant had admitted) all but one of the elements of the jury instruction. Point one does not contend that appellant had conceded, or that no reasonable jury could deny, that appellant knew or should have known of the dangerous condition in its parking garage, which is, as the jury instruction (patterned on M.A.I. 22.03) made clear, one of the elements of the respondents' cause of action. Though the trial court has the "widest discretion" to grant a new trial to a plaintiff where the plaintiff has put on a submissible case, *Ray v. Gabbard,* 886 S.W.2d 696, 698 (Mo. App.1994), a plaintiff has not put on a submissible case merely because some, but not all, of the elements of the plaintiff's case have been proven or admitted by the defendant. Point one, as it rested on a flawed legal claim, did not warrant concluding that the verdict was against the weight of the evidence. The trial court did not have the discretion to rest its new trial order on a legal error. *See supra.*

*McDowell v. Kawasaki Motors Corp. USA,* 799 S.W.2d 854 (Mo.App.1990), confirms the insufficiency of point one. After the jury returned a verdict in favor of the McDowells, the trial court granted Kawasaki Motors a new trial by incorporating

---

3. *Accord Giddens v. Kansas City S. Ry. Co.,* 937 S.W.2d 300, 303 (Mo.App.1996); *Buckallew v. McGoldrick,* 908 S.W.2d 704, 707 (Mo. App.1995); *Sparkman v. Wabash R.R. Co.,* 191 Mo.App. 463, 177 S.W. 703, 705 (1915) ("While trial courts are vested with a wide discretion in the matter of granting new trials, where, as here, a motion for new trial is sustained through a pure mistake of law, in the erroneous belief that error was committed at trial, the court's action will be reversed on appeal, unless it can be upheld on some other ground of the motion."). *See also Emery v. Hunt,* 272 F.3d 1042, 1046 (8th Cir.2001) ("A district court abuses its discretion if it commits an error of law.").

by reference paragraphs six, seven, and eight of Kawasaki's motion for new trial.[4] *Id.* at 857, 859. The McDowells appealed. Kawasaki argued that the court's order should be affirmed because paragraph seven of its motion said the verdict was against the greater weight of the evidence. *Id.* at 859–60. This court noted that paragraph seven claimed the verdict was against the weight of the evidence because of reasons stated in paragraph six. *Id.* at 861. It then found legally wanting paragraph six's grounds for a new trial. *Id.* at 861–67. Thus, this court held, paragraph seven did not warrant a new trial. *Id.* at 867. Likewise, the reasons adduced by the respondent in point one were inadequate to conclude that the verdict was against the weight of the evidence. Only by overruling *McDowell,* which the respondent had not requested, can this court hold that the trial court did not abuse its discretion in granting a new trial based on point one of the respondents' motion.

That the respondents cited Rule 78.02 in their motion for new trial makes no difference. The question is whether the reasons given for concluding that the verdict was against the weight of the evidence were valid. They weren't. The citation to 78.02 just indicates the respondents thought that the verdict was against the weight of the evidence.

Neither *State ex rel. State Highway Commission v. Vaught,* 400 S.W.2d 153 (Mo.1966), nor *Davis v. Perkins,* 512 S.W.2d 868 (Mo.App.1974), help the respondent. In both cases, the trial court clearly said the verdict was against the weight of the evidence. *Vaught,* 400 S.W.2d at 154; *Davis,* 512 S.W.2d at 870.

It was thus unnecessary—and the appellate court refused—to go behind the trial court's order to determine why the new trials were ordered. *Vaught,* 400 S.W.2d at 154; *Davis,* 512 S.W.2d at 871. Here, the trial court did not clearly say the verdict was against the weight of the evidence. *See infra.* In fact, it appears that the trial court read point one of the new trial motion as a veiled attack on the jury instruction. *Cf. Butts v. State,* 85 S.W.3d 132, 133 (Mo.App.2002). Point one presupposes the respondent did not have to prove that appellant knew or should have known of the dangerous condition on appellant's property in order to prevail. In its new trial order (which this court interprets *de novo, In the Interest of T.A.S.,* 62 S.W.3d 650, 657 (Mo.App.2001)), the trial court said that the respondent had "advanced eight allegations of trial error," but only points two through seven explicitly speak in terms of trial error. "Trial error" usually refers to (a) error that occurred during the trial or (b) error committed by the trial court. It is unlikely that by "trial error" the trial court meant a substantively defective outcome reached after the close of all the evidence. Further confirmation of this conclusion is the fact that the trial court held that the trial errors "were of sufficient magnitude to deny the plaintiffs of a fair trial." The right to a fair trial by a fair tribunal is a matter of *procedural* due process. *Orion Sec., Inc. v. Bd. of Police Comm'rs of Kansas City,* 90 S.W.3d 157, 164 (Mo.App.2002). A verdict that is against the weight of the evidence can be reached without there having been any procedural mistakes. On the other hand, instructional error can result in the denial of the right to a fair trial.

---

4. The trial court's order in the instant case is not completely on all fours with the order in *McDowell.* In addition to referring to the points of the respondents' motion for new trial, as the trial court in *McDowell* did, the trial court in this case also gave two independent reasons, one dealing with the nondelegability of appellant's duties, for granting the motion.

*State v. Roe*, 6 S.W.3d 411, 419 (Mo.App. 1999) [Teitelman, J., dissenting]. While not dispositive, nowhere in point one and nowhere in the respondents' motion do they ever use the expression "submissible case." When the trial court incorporated point one into its order, it incorporated the entirety of point one. The respondent would have this court ignore everything in point one except the caption. To do this would require this court to ignore *McDowell* and to rewrite the respondents' motion for new trial. *See supra.* Assuming, for the sake of argument, that the trial court's interpretation of point one is correct, point one was not a sufficient basis for ordering a new trial, since there was nothing wrong with the instruction, as will be shown presently. *See infra.*

The respondent submits that "[e]ven when a *trial court* gives obscure, incorrect[,] or erroneous reasons for its order granting a new trial on the ground that the verdict was against the weight of the evidence, [it] is conclusively presumed to have been made on that ground." *McCormack*, 35 S.W.3d at 414 (emphasis added). Appellant has not argued that because the *trial court* gave obscure or incorrect reasons in its order, the order should be vacated. Rather, appellant attacks the legal soundness of point one, whether it is an attack on the sufficiency of the evidence or the jury instruction, as it appears the trial court treated it (perhaps on the theory that point one could not have been the former because, if it were, it was patently defective). As noted previously, the trial court did not explicitly say that it was ordering a new trial because the verdict was against the weight of the evidence, and all signs indicate that it treated point one as a veiled attack on the jury instruction. Thus, *McCormack* is inapposite. In any event, even if the trial court's order is "conclusively presumed" to have been predicated on the ground that the verdict was against the weight of the evidence, that doesn't mean a new trial order can never be vacated.

In sum, point one of the respondents' motion for new trial presented, at best, a mixed bag of discretionary and legal grounds for receiving a new trial. The header and the last sentence use the words "against the weight of the evidence," but the clear import of the point argued that the trial court committed error by adopting an element of proof and a corresponding portion of the verdict director that erroneously added the element. The trial court's language in sustaining the motion concluding that "trial errors committed as alleged in Point[s] No. 1 ... were of sufficient magnitude" to warrant a new trial, clearly shows the court did not say nor did it rely on the discretionary ground of the verdict being against the weight of the evidence to sustain the new trial motion. The trial court did not specify discretionary grounds in granting the new trial. There was no creation of any presumption of a discretionary reason for the grant. Rule 84.05(d). There is no reason to believe that the grant was for anything but trial error. The giving of the proper MAI for this case was not error. For the ground of trial error relied upon in deciding this first point, the trial court abused its discretion in granting the motion.

\*　　\*　　\*　　\*　　\*　　\*

 Points two and three of the respondents' motion are substantively identical. Point two faults appellant for putting on evidence and arguing to the jury that it should not be held liable because it did not know and should not have known that the column base was dangerous, while point three faults the trial court for accepting their instruction patterned on M.A.I. 22.03, instead of accepting the respondents' proffered instruction that

omitted any such knowledge element. Running through both points is the belief that the acceptance doctrine (a.k.a., the "accepted work doctrine" or the "acceptance rule"), which absolves contractors of liability to third parties once the owner accepts the contractor's work as being in full compliance with the terms of the contract, *Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 589 (Mo.App.2000), imputes the negligence of the contractor to the owner.

The acceptance doctrine is often described as an affirmative defense. *See, e.g., Miller v. McBride & Son Contracting, Inc.*, 29 S.W.3d 415 (Mo.App.2000) (per curiam). *Constance* left open the possibility that the acceptance doctrine can also be used as a sword. 25 S.W.3d at 589. *Casey v. Hoover* has opined that:

> By occupying and resuming possession of the work, the owner deprives the contractor of all opportunity to rectify his wrong. Before accepting the work as being in full compliance with the terms of the contract, he is presumed to have made a reasonably careful inspection thereof, and to know of its defects, and, if he takes it in the defective condition, he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author.... His liability may be incurred either from his substitution for the contractor or from his neglect to repair.

114 Mo.App. 47, 89 S.W. 330, 334 (1905). *Accord Gruhalla v. George Moeller Constr. Co.*, 391 S.W.2d 585, 597 (Mo.App.1965).

■ There are difficulties with the respondents' attempted use of the acceptance doctrine as a cause of action. First, *Casey* treats the acceptance doctrine as a separate cause of action from one predicated on the "neglect [of the owner] to repair," not as a basis for excusing the plaintiff from having to prove the "knowledge" element in a premises liability action. The respondents' petition did not sue under the acceptance doctrine, and so, not having been pled, it cannot be a ground for a new trial. *See Pollock v. Berlin–Wheeler, Inc.*, 112 S.W.3d 73, 77 (Mo.App.2003); *Clay v. Mo. Highway & Transp. Comm'n*, 951 S.W.2d 617, 631 (Mo.App.1997). *See also Eagle v. Redmond Bldg. Corp.*, 946 S.W.2d 291, 295 n. 4 (1997) (holding that issues raised for the first time in untimely-filed suggestions in favor of motion for new trial could were not preserved for appellate review).

Second, the language from *Casey* appears to be obiter dictum, which "bindeth none, not even the lips that utter it." *Muench v. S. Side Natl. Bank*, 251 S.W.2d 1, 6 (Mo.1952). *Accord McPherson v. U.S. Physicians Mut. Risk Retention Group*, 99 S.W.3d 462, 484 (Mo.App.2003). It is dictum because it was completely unnecessary to decide whether the acceptance doctrine created a cause of action in order to decide the case before it, in which the doctrine was raised as a defense. The respondent says that *Casey*'s rationale for the acceptance doctrine is binding, but cites no authority for this proposition.

Even if the rationale in *Casey* were binding, this court would be constitutionally bound to ignore it; it is inconsistent with recent Supreme Court precedent. *See Country Club Dist. Homes Ass'n v. Country Club Christian Church*, 118 S.W.3d 185, 193 (Mo.App.2003). The acceptance doctrine, as delineated by the respondent, is a theory of strict liability, because no matter how careful the owner is in selecting or monitoring a contractor, the owner is automatically saddled with the contractors negligent performance upon acceptance of the contractors work. If, as in this case, the contractor is an independent contractor, the Supreme Court has held that the owner is only

strictly liable when the contractors negligence pertains to the owners non-delegable duties (e.g., for inherently dangerous activities). *Matteuzzi v. Columbus P'ship., L.P.*, 866 S.W.2d 128, 130–31 (Mo. banc 1993). *Accord Scott v. Edwards Transp. Co.*, 889 S.W.2d 144, 146 (Mo.App. 1994) ("[A] landowner has never been liable for bodily harm caused by the torts of an independent contractor unless the contractor's activity was inherently dangerous.").

 Before this appeal, the respondents never claimed they did not have to prove the "knowledge" element of M.A.I. 22.03 on the grounds that the contractor that created the dangerous condition was an employee of appellant. Now, they do, citing *Cline v. Carthage Crushed Limestone Co.*, 504 S.W.2d 102, 111 (Mo.1973), and other cases. However, "[r]espondent[s'] efforts to support the new trial award are confined to the errors specified in its motion for new trial." *Commercial Union Ins. v. Steel Erectors of Springfield, Inc.*, 913 S.W.2d 371, 373 (Mo.App.1996). *Accord McGraw v. Andes*, 978 S.W.2d 794, 801 (Mo.App.1998). *See also Pollock*, 112 S.W.3d at 77; *Clay*, 951 S.W.2d at 631. Furthermore, the respondents never put on any evidence, and appellant never admitted, that the contractor was an employee of appellant. Throughout the trial, appellant was assumed to be an independent contractor.

The respondents also contend that because appellant admitted that the column base was in violation of municipal building codes, appellant was negligent *per se* and thus the verdict was against the weight of the evidence. They, however, did not sue on a theory of negligence *per se;* the verdict cannot be against the weight of the evidence based on a theory never pled. Moreover, an admission by appellant that the construction was in violation of the building code and that the column base caused respondents' injuries does not make appellant negligent *per se.* A negligence per se action has two other elements—that the injured person was a member of the class the ordinance was designed to protect and that the injury complained of was the kind the ordinance was designed to prevent. *Sill v. Burlington N. R.R.*, 87 S.W.3d 386, 392 (Mo.App. 2002). The respondent has never contended (in their motion for new trial, in their suggestions in support thereof, or in their brief) that appellant admitted these two elements or that there was sufficient evidence to prove them.

Points two and three do not support the trial court's new trial order.[5]

\* \* \* \* \* \*

 Point four of the respondents' motion for new trial faulted the trial court for preventing them from asking appellants witness, Bill Woodhouse, the project

---

5. It is possible, though APPELLANT hasn't raised the issue, that the Respondents were estopped from denying the validity of the actual jury instruction. "As a general rule, a party is bound by allegations or admissions of fact in his own pleadings. In other words, he may be estopped or precluded by his pleadings." 28 Am.Jur.2d *Estoppel & Waiver* § 78 (2000). *See also New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (noting that judicial estoppel is often invoked to "prohibit[ ] parties from deliberately changing positions according to the exigencies of the moment" and that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle") (internal quotations omitted). Here, the Respondents alleged in their petition that APPELLANT "knew or should have known that said area was a dangerous and/or defective condition." The petition said nothing about constructive knowledge or implied knowledge or knowledge implied by law.

architect, about his financial interest in the outcome of the trial. Exposing a witness's bias on cross-examination or by extrinsic evidence is a valid form of impeachment. McCormick on Evidence § 38 (5th ed.1999). A trial court has discretion to limit inquiry into bias, but it may not prevent it entirely. *State v. Hall*, 117 S.W.3d 744, 747 (Mo.App.2003). "A trial court may, on a motion for new trial, reconsider its discretionary rulings and order a new trial if it believes its discretion was not wisely exercised and the losing party was prejudiced as a result." *Whitted*, 90 S.W.3d at 473.

Here, the respondents were never barred from asking about Woodhouses bias, and so this was not a basis for ordering a new trial. *State v. Hardin*, 581 S.W.2d 67, 68–69 (Mo.App.1979) (holding that trial court did not err in limiting cross-examination where counsel abandoned line of inquiry). *See also Randolph v. USF & G Cos.*, 626 S.W.2d 418, 421–22 (Mo.App.1981) (holding that asking leading questions of experts is generally permissible and thus not a reason to order a new trial). Appellant had filed an indemnity action against Woodhouses employer, the architecture firm involved in building the column base in question. Appellant had called Woodhouse to show that they did not have notice of the dangerousness of the column base because Woodhouse had certified that the garage had been built in compliance with the construction contract. (The indemnity action was severed from the respondents' case.) Respondents counsel asked Woodhouse to explain the arbitration clause in the contract between appellant and Woodhouses employer. Appellant objected on the grounds of irrelevancy and bias. The trial court instructed the respondents' counsel to rephrase the question, yet allowed him to "ask him about that [meaning, Woodhouses bias]." Counsel then asked Woodhouse, "Isn't it true, sir, your company, ACI, has an economic interest in the outcome of this case?" Woodhouse said he didn't understand the question. Counsel did not ask the court to instruct Woodhouse to answer. The court then said, "He obviously doesn't understand the question." Counsel said he'd ask a different one, but then asked the same question. The court again sustained appellant's objection. Respondents counsel then abandoned this line of inquiry. The respondents have never controverted the courts finding that counsels question was confusing. Since the trial court properly handled the cross-examination of Woodhouse in the first place, sustaining the new trial motion on this ground would be error.

\* \* \* \* \* \*

▮▮▮ Point six of the motion asserted trial error in not allowing the respondent to introduce evidence of subsequent remedial measures by appellant—namely, appellant's painting of the column base yellow, and from asking appellants risk manager about her role in directing the column to be painted.

▮▮▮ The general rule barring evidence of subsequent remedial measures is designed to further the public policy in favor of eliminating safety hazards, as well as making already safe things safer. *Danbury v. Jackson County*, 990 S.W.2d 160, 165 (Mo.App.1999). Such evidence can be admitted for other purposes besides proving fault—for instance, "ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." *Smith v. Wal–Mart Stores, Inc.*, 967 S.W.2d 198, 207 (Mo.App.1998). Even if evidence of subsequent remedial measures is admitted for a proper purpose, there is still a significant risk that the jury will treat the evidence as an admission of fault, no matter what limiting instruction trial

judge gives, 2 DAVID LOUISELL CHRISTOPHER MUELLER, FEDERAL EVIDENCE § 164, at 382 (2nd ed.1985). The evidence was properly excluded. *Brooks v. Elders, Inc.,* 896 S.W.2d 744, 745 (Mo.App.1995). In any event, this evidence did come in. After respondents' counsel repeatedly implied that appellant did nothing to repair the column base (in violation of the court's order forbidding reference to appellant's subsequent remedial measures), the court allowed appellant to introduce evidence that it had painted the column base yellow.

\* \* \* \* \* \*

The final reason why the trial court ordered a new trial was point eight of the respondents' motion, which reads: "The cumulative effect of the errors specified in [p]oints 2 through and including 7 deprived plaintiffs of a fair trial." The trial court rejected already points five and seven of the respondents' motion, so, according to its own terms, point eight was inadequate basis for granting a new trial. More importantly, no amount of non-errors can constitute error. *Nelson v. Waxman,* 9 S.W.3d 601, 608 (Mo. banc 2000). *Cf. State v. Edwards,* 116 S.W.3d 511, 551 (Mo. banc 2003); *Koontz v. Ferber,* 870 S.W.2d 885, 894 (Mo.App.1993).

### IV. CONCLUSION

The trial court abused it discretion in ordering a new trial. The order granting a new trial is reversed, and the case is remanded for entry of a judgment in accordance with the jury's verdict.

All concur.