Pamla G. LAWS, Appellant,

v.

ST. LUKE'S HOSPITAL,
et al.; Defendant.

Thomas Helling and Mid-america
Surgical Specialists, P.C.;
Respondents

Melissa Vu, Defendant.

No. WD 66564.

Missouri Court of Appeals,
Western District.

Jan. 9, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 27, 2007.

Application for Transfer Denied
May 1, 2007.

Laura L. Del Percio, Douglas R. Horn, Independence, for appellant.

Timothy M. Aylward, Bradley M. Dowd, Kansas City, for respondents.

Richard D. Simpson, Ashley T. Dean, Kansas City, for defendant, Melissa VU.

St. Luke's Hospital of Kansas City, defendant.

Before THOMAS H. NEWTON, P.J., PATRICIA A. BRECKENRIDGE, and JOSEPH M. ELLIS, JJ.

THOMAS H. NEWTON, Presiding Judge.

### Factual and Procedural Background

Because Ms. Pamla G. Laws was obese and had suffered from severe sleep apnea, she had gastric bypass surgery ("bariatric surgery") to help her lose weight. Dr. Thomas Helling performed the surgery, and afterwards Ms. Laws was taken to a post-anesthesia recovery room. An order

on Ms. Laws's chart stated, "Elect not to extubate [1] at surgeon's request." In a pre-operative consultation with Dr. Helling, Ms. Laws testified that since she had a history of sleep apnea, obesity, and the use of drugs after surgery, Dr. Helling assured her that a breathing tube would be left in her overnight, because with those conditions, she was considered high risk to develop breathing problems. In the recovery room Dr. Melissa Vu,[2] a resident anesthesiologist, extubated Ms. Laws. Dr. Vu discussed this procedure with Dr. Nancy Bruda, the attending anesthesiologist, who gave her permission to extubate Ms. Laws. Approximately four hours later, Ms. Laws went into respiratory arrest, and her breathing was inadequate to remove the carbon dioxide in her system. While Dr. Bruda attempted to clear an airway, a resident surgeon, Dr. Gibson, performed emergency surgery and created a tracheostomy[3] in Ms. Laws's throat. Since the emergency tracheostomy, Ms. Laws has undergone several surgeries to remove the tracheotomy, but these surgeries have been unsuccessful.

Ms. Laws sued Drs. Helling and Vu and St. Luke's Hospital of Kansas City for medical negligence. Ms. Laws presented two expert witnesses, Dr. Jonathan Benumof, an anesthesiologist, and Dr. Robert Zarranz, a laryngologist.[4] Dr. Benumof testified about the standard of care and causation as it related to the extubation of Ms. Laws. Dr. Zarranz testified about the standard of care for communication between a surgeon and the other doctors

treating patients. Additionally, portions of a letter from Dr. Bruda, writing in response to the emergency operation, were read to the jury. In the letter Dr. Bruda requested clarification on a number of issues including: the extubation policies the surgery department wants implemented, and who is responsible for performing the extubation of patients when it is not done in the emergency room.

The case was submitted to a jury on the theory that Dr. Helling was negligent by failing to properly communicate to the persons providing Ms. Laws post-operative care regarding extubation. The jury returned a verdict for Ms. Laws against Dr. Helling and Dr. Vu for $1,026,000, assigning 51% of the fault to Dr. Helling and 49% of the fault to Dr. Vu, who later settled. Thereafter, the trial court granted Dr. Helling's motion for judgment notwithstanding the verdict (JNOV). In the order granting the JNOV, the trial court stated that "based upon the weight of the evidence and arguments of Counsel, if it had not granted [the JNOV motion] it would have ordered a new trial."

Ms. Laws appeals the grant of JNOV to Dr. Helling, claiming that she made a submissible case of medical malpractice. She also appeals the grant in the alternative of a new trial, asserting that the trial court failed to give specific reasons for ordering a new trial because the verdict was against the weight of the evidence. Dr. Helling raises several other issues in his response: that Dr. Zarranz's professional qualifica-

---

1. Intubate and extubate are medical terms for inserting and removing an endotracheal tube. The purpose of an endotracheal tube is to establish and maintain an airway to assist a patient's breathing.

2. At the time of the surgery Dr. Vu's surname was Mena. She is referred to throughout the record as either Dr. Mena or Dr. Vu. For clarity we will address her only as Dr. Vu.

3. A tracheostomy is a hole formed in someone's throat as a result of an emergency surgery to clear an airway.

4. More commonly known as an ear, nose, and throat doctor.

tions did not qualify him to testify as an expert; that the standard of care given by Dr. Zarranz was incorrect; that evidence of a prior death was improperly allowed, and that one of the jury instructions was improperly submitted to the jury. We will discuss the issues related to JNOV and whether the grant of a new trial in the alternative was proper. We also address Dr. Helling's additional issues because they will likely arise in the new trial. We reverse the grant of JNOV and affirm the grant of a new trial.

### JNOV was Improperly Granted

■ In her first point, Ms. Laws argues that JNOV was granted improperly because she made a submissible case of medical negligence. JNOV is approved only if the plaintiff failed to make a submissible case. "To make a submissible case of negligent medical treatment, plaintiff must establish that (1) an act or omission of defendant failed to meet the requisite medical standard of care, (2) the act or omission was performed negligently, and (3) there was a causal connection between the act or omission and plaintiff's injury." *Sheffler v. Arana*, 950 S.W.2d 259, 267 (Mo.App. W.D.1997). "In determining whether plaintiff made a submissible case against defendant, the reviewing court views the evidence in the light most favorable to plaintiff, giving plaintiff the benefit of all favorable evidence and reasonable inferences drawn therefrom, and disregards all contrary evidence." *Id.* There is a presumption favoring the reversal of a judgment notwithstanding the verdict. *Collins v. Hertenstein*, 90 S.W.3d 87, 94 (Mo.App. W.D.2002). The presumption is overcome where " 'the evidence and inferences favorable to the plaintiff leave no room for reasonable minds to differ as to the outcome.' " *Id.* (citation omitted).

### Standard of Care and Negligence

■ Ms. Laws made a submissible case on the issue of standard of care. Generally, expert testimony is required to establish the standard of care. *Sheffler*, 950 S.W.2d at 267.

> Negligence is the failure to use that degree of skill and learning ordinarily used by members of one's profession under the same or similar circumstances. In articulating the appropriate legal standard of care, it is insufficient for an expert merely to use the terms "accepted medical standards" or "standards of care." Instead, an expert should be properly oriented with the meaning of negligence in a health care provider context and, in fact, employ the legal standards in offering his opinion. Additionally, the jury must be informed that the expert has utilized the appropriate legal standards. The purpose of these requirements is to prevent experts from relying upon their own views of acceptable practice rather than applying the objective legal standards.

*Id.* (citations omitted).

In this case Dr. Zarranz testified that, based upon his training and education, Dr. Helling had not acted as a reasonable doctor under the same or similar circumstances, in that he did not, among other things, communicate the high risk of Ms. Laws's recovery and the need to keep her intubated overnight. Thus, Dr. Zarranz's testimony shows that Dr. Helling's inadequate communication about Ms. Laws's medical conditions as a high-risk patient proves Dr. Helling's failure to ensure proper maintenance of her airway by leaving her intubated until the next morning when more staff was available for monitoring the patient. Additionally, the letter from Dr. Bruda admitted expressed her concerns about the communication for gastric bypass patients and intubation, medi-

cation, and poor communication regarding the care of these patients. This testimony taken in the light most favorable to Ms. Laws does establish that Dr. Helling's actions fell below the standard of care.

### Causation (Proximate and Action)

 Ms. Laws also presented sufficient evidence to prove causation. Causation does not need to be proved with direct evidence but can be proved circumstantially. *Jines v. Young*, 732 S.W.2d 938, 945 (Mo.App. S.D.1987). A submissible case for causation is made if substantial evidence is presented that the injury is a "natural and probable consequence of the defendant's act or omission." *Id.* The evidence is sufficient "[i]f the logical conclusion from the evidence is that if certain things had been properly done certain results would not have occurred, and such results *did* occur." *Id.* Thus, neither expert had to directly state that lack of communication caused the injury. Viewing the evidence and inferences in the light most favorable to Ms. Laws, a submissible case of causation was made.

The evidence most favorable to Ms. Laws established that the logical consequence of Dr. Helling's failure to communicate effectively was that Ms. Laws would be extubated during the evening after her surgery. Without the extubation, the tracheotomy would not have been necessary.

Taking the evidence in the light most favorable to Ms. Laws and disregarding any evidence to the contrary, a chain of causation was established linking Dr. Helling's failure to communicate to the extubation and the tracheostomy, which is the underlying injury of this action. Dr. Benumof's testimony establishes that the extubation caused the tracheotomy, which has been difficult to repair and has not been rectified to date. Dr. Benumof also testified that, within a reasonable degree of medical certainty, the tracheostomy was a

result of Dr. Vu's deviation from the standard of care, which he established as her failure to ensure that Ms. Laws could breathe on her own. Dr. Zarranz's testimony that Dr. Helling breached his standard of care by failing to communicate properly with the anesthesiologists, taken with Dr. Benumof's testimony, circumstantially establishes that the failure to communicate caused the extubation, based on the reasonable inference that Dr. Vu would not have extubated Ms. Laws if the high risk of doing so had been properly communicated. Thus, the JNOV was improperly granted.

### The New Trial was Proper

 We now turn to Ms. Laws' fourth point in which she argues that granting a new trial was presumptively erroneous because the Order failed to give specific reasons for ordering the new trial. "Trial courts have broad discretion to grant a new trial because the verdict was against the weight of the evidence." *Dick v. Children's Mercy Hosp.*, 140 S.W.3d 131, 137 (Mo.App. W.D.2004). The trial court in its Order granting JNOV, indicated that if JNOV had not been granted that a new trial would have been granted based upon the weight of the evidence. Thus, the judgment for new trial is not presumptively erroneous. *See id.* at 136.

 The Missouri Rules of Civil Procedure allows one new trial to be granted if the verdict is against the weight of the evidence. Rule 78.02. "The grant of a new trial based on Rule 78.02, that the verdict was against the weight of the evidence, will be reversed only if there has been a manifest abuse of discretion, since the trial court is in a better position to weigh evidence than the appellate courts." *Dick*, 140 S.W.3d at 136. It is more likely that the grant will be upheld than denied. *Id.* We will view all inferences and evi-

dence in the light most favorable to the trial court's decision. *Id.* "Discretion is not abused where there was substantial evidence to support a verdict for the party awarded the new trial." *Resco Constr. Co. v. Dawson Cabinet Co.,* 656 S.W.2d 324, 326 (Mo.App. S.D.1983). Furthermore, the granting of a new trial for specific reasons acts as a rejection of all other reasons for new trial. *Dick,* 140 S.W.3d at 136.

However, when the new trial is granted to a defendant, the standard of review is different. *Reyes v. St. Luke's Hosp.,* 716 S.W.2d 294, 295 (Mo.App. W.D. 1986). Because a defendant can succeed in a trial without presenting any evidence, we are not required to determine if substantial evidence was presented to support a verdict for defendant. *Id.* Unfortunately the standard for abuse of discretion in these cases is ill defined. In cases where the defense did not present evidence, the new trial is affirmed if some of the plaintiff's evidence is oral testimony on which a credibility judgment is required and that credibility judgment affects the outcome for or against the plaintiff. *See e.g., id.;* *O'Neal v. Agee,* 8 S.W.3d 238, 241 (Mo. App. E.D.1999); *Torre Specialties, Inc. v. Coates,* 832 S.W.2d 914, 918–19 (Mo.App. W.D.1992). In a case where the defendant presented evidence, that evidence was sufficient to justify a jury verdict for the defendant, and this court affirmed the new trial. *McGraw v. Andes,* 978 S.W.2d 794, 804–05 (Mo.App. W.D.1998) ("There was evidence, however, to the contrary and that evidence would have upheld a jury verdict in favor of McGraw."). An abuse of discretion is found where no verdict for the [party granted the new trial] could ever be permitted to stand. *See id.* at 801, 804–805.

The question is: would Dr. Helling's evidence uphold a jury verdict in his favor?

*Id.* at 804–05. We answer this without reference to any other evidence to avoid weighing the evidence. In this case, the new trial was granted for being against the weight of the evidence, and the underlying facts that serve as a basis for this were those presented in oral testimony by the experts and witnesses at the trial. Because this is an issue of credibility for which we defer to the judgment of the trial court, we will affirm the new trial if the evidence presented by Dr. Helling would have allowed a jury verdict in the defendant's favor to stand.

Dr. Helling presented evidence for which a jury verdict in his favor would have been allowed to stand. Evidence was presented that he met the standard of care for communication to other health care professionals by discussing extubation with the anesthesiologists and placing an order in the chart not to extubate. Furthermore, evidence adduced at trial indicated that doctors do not dictate orders to other doctors but consult with each other, with the final decision made by the doctor responsible for that particular aspect of the patient's care. Additionally, evidence was presented that anesthesiologists, not surgeons, are responsible for determining when a patient is extubated, because they have expertise in anesthesia and airway control. The evidence also showed that the collapse of the airway likely would have happened regardless of when Ms. Laws was extubated. Thus, the anesthesiologist was responsible for making the decision. Additionally, evidence was presented that the tracheotomy was unnecessary, and, therefore, the lack of communication did not cause the tracheotomy; rather, the cause of the tracheotomy was a surgical resident who performed the procedure unnecessarily.

The basis for accepting this evidence is a credibility determination by the jury. The

trial court was acting within its discretion to weigh the evidence based on the credibility of the defendant and the State's witnesses. Therefore, looking at all the evidence in the light most favorable to the trial court's decision to grant a new trial, Dr. Helling presented substantial evidence to establish a verdict in his favor. Thus, the trial court's judgment to grant a new trial is affirmed.

### Other Issues

Since the following points may be presented at the new trial, we will briefly discuss them for assistance to the parties and the trial court.

### Foundation for Dr. Zarranz as an Expert Witness

 Although the trial court in its approval of the motion for JNOV noted some misgivings about allowing Dr. Zarranz to present standard of care opinions, this was not the basis for the new trial. Specifically, the trial court cited the following reasons in granting the JNOV: the expert was unqualified because he had not had hospital privileges in nine years; he had been suspended involuntarily by a hospital; and he had not been in private practice for four years.

 An expert can be qualified to give an opinion by "knowledge, skill experience, training, or education." RSMo § 490.065.1 (2000). The admission of expert testimony is reviewed for abuse of discretion. *Bella v. Turner*, 30 S.W.3d 892, 899 (Mo.App. S.D.2000). A physician expert may opine regarding the standard of care and whether a physician met that standard, even if the expert practices in a different field of specialization than the defendant. *Id.* This fact only affects the weight the opinion should be given. *Id.* In this case, Dr. Zarranz's specialty provided him with knowledge of both airway management, concerning intubation and extu-

bation, as well as exposure to morbidly obese patients with sleep apnea. The trial court did not abuse its discretion by allowing the opinions of Dr. Zarranz.

### The "Attending Surgeon" Theory of Recovery

 Dr. Zarranz's testimony seems to be presenting a "captain of the ship" argument, which has neither been adopted nor rejected as proper in Missouri. We do not determine whether in general this theory is proper or not, but we do find that the theory as presented was proper. Dr. Zarranz's opinion listed several duties of the attending surgeon, including communicating information about high-risk patients and coordinating post-operative care. The theory presented to the jury was that Dr. Helling was negligent for failing to adequately communicate.

Dr. Zarranz discussed the standard of care for communication about high-risk patients and directing post-operative care. Only the testimony about directing post-operative care implicates a "captain of the ship" theory, and this was not furthered in the trial nor was it submitted to the jury in the jury instructions. Therefore, we find no error in allowing this testimony.

### Prior Death Evidence

Dr. Helling also contends that JNOV was proper because Dr. Zarranz's entire opinion was based on the prior death of a patient treated by Dr. Helling. In his deposition Dr. Zarranz was asked what Dr. Helling would have needed to do differently had the prior death not occurred, and he answered "nothing." He also stated that the prior death formed the basis of his opinion. The trial court excluded any mention of the prior death at trial by granting defendants' motion *in limine*, but allowed Dr. Zarranz to give his opinion, which was, at least in part, based on that

death. Dr. Helling insists this was improper because Dr. Zarranz did not have enough information to form an opinion about the cause of the prior death. Dr. Helling argues that this means that Dr. Zarranz should not have been allowed to testify. We disagree.

Dr. Zarranz's opinion is not based on the cause of the previous death. Instead it is based on the fact that the prior death, which involved the same surgery and occurred after extubation, should have put the doctors on heightened notice of the problems associated with high-risk bariatric patients and, in particular, that care should be taken when extubating a patient.

Dr. Helling further argues that Dr. Zarranz's opinion about the "failure to adequately communicate" was vague and devoid of any detail regarding how he should have communicated. Implicit in Dr. Zarranz's opinion is that Dr. Helling should have told the other doctors about the high-risk posed to Ms. Laws and that her extubation should have been delayed. Dr. Helling's testimony that he would have preferred the extubation in the morning when there were more people to monitor patients indicates that he believed she should have been left intubated for a longer period of time. Hence, the trial court did not abuse its discretion by allowing Dr. Zarranz to testify.

### Submission of Instruction No 9 was Appropriate

 In her third point, Ms. Laws argues that jury instruction number nine was properly submitted and not a proper basis for granting a JNOV. A properly submitted jury instruction is "supported by sufficient evidence, and every element of a verdict director must be supported by substantial evidence." *Williams v. Daus*, 114 S.W.3d 351, 363 (Mo.App. S.D.2003) (citation and internal quotation marks omitted). We examine the sufficiency of

the evidence in the light most favorable to the submission of the instruction. *Id.* at 364. If the instruction is supportable under any theory, then it was properly submitted. *Id.* In the discussion *supra* regarding the grant of JNOV, we examined the evidence for causation and standard of care and determined that it was sufficient to make a submissible case. Therefore, this evidence is insufficient to declare that submission of the instruction was improper.

 Alternatively, Dr. Helling contends that the jury instruction created a "roving commission" and was thereby improper. Jury instructions must contain the ultimate facts. A roving commission is a jury instruction that assumes a disputed fact or submits abstract legal questions that allow the jury to roam freely through the evidence and choose any facts, which suited its fancy or its perception of logic, to impose liability. *Brooks v. SSM Health Care*, 73 S.W.3d 686, 696 (Mo.App. S.D. 2002).

The phrase "failure to adequately communicate," referring to nonspecific medical information, did not create a roving commission. This phrase could be considered "confusing and misleading," such that it failed to provide the jury with guidance. *St. Joseph's Hosp. of Kirkwood v. Schierman*, 829 S.W.2d 4, 6 (Mo.App. E.D.1991). However, such a jury instruction is allowed if the misleading phrase was given flesh and meaning by evidence presented during the trial. *Williams v. Daus*, 114 S.W.3d 351, 371 (Mo.App. S.D.2003). Where the word or phrase is not a scientific word, which requires a definition from an expert to aid the jury, a roving commission is not created. *See Kampe v. Colom*, 906 S.W.2d 796, 805 (Mo.App. W.D.1995).

Dr. Zarranz gave flesh and meaning to the term "adequately communicated" when he opined that Dr. Helling should have communicated that Ms. Laws be left intu-

bated overnight. Furthermore, "communicated" is a non-scientific/non-medical term, for which the jury does not need an expert definition. The jury instruction, with the flesh and meaning provided by Dr. Zarranz's testimony, is sufficient to guide the jury; the jury was not given free reign by the instruction to roam through the evidence to choose any facts it likes to reach a verdict. When viewed in the light most favorable to submission of the jury instruction, the term "failure to adequately communicate" did not create a roving commission.

If the jury instruction had been a roving commission, the correct remedy would have been a new trial not a JNOV.

### Conclusion

Because JNOV was improperly granted, but the granting of a new trial was proper, we remand this case for a new trial.

PATRICIA A. BRECKENRIDGE, and JOSEPH M. ELLIS, JJ. concur.